UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL SILVER,<br><br>  Plaintiff,<br><br>v.<br><br>TOBIAS & ASSOCIATES INC.,<br><br>  Defendant. | Case No. 20-cv-07382-JSW<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF JURISDICTION AND GRANTING MOTION TO STAY**<br><br>Re: Dkt. Nos. 19, 32 |

Now before the Court for consideration are Defendant Tobias & Associates, Inc.'s ("Tobias") motion to strike class allegations, or, in the alternative, to stay this action, and its motion to dismiss Plaintiff Neil Silver's ("Silver") First Amended Complaint ("FAC") for lack of subject matter jurisdiction and for failure to state a claim.[1] The Court HEREBY DENIES Tobias's motion to dismiss the FAC for lack of subject matter jurisdiction, GRANTS Tobias's motion to stay the case, and DENIES WITHOUT PREJUDICE Tobias's motions to dismiss the FAC for failure to state a claim and to strike class allegations.

**BACKGROUND**

Silver filed this putative class action on October 21, 2020, alleging that Tobias negligently and willfully violated the Telephone Consumer Protection Act of 1991 ("TCPA") by making unwanted calls to him and to others using an automatic telephone dialing system ("ATDS") and/or an artificial or prerecorded voice. (Complaint ¶¶ 10-20); *see also* 47 U.S.C. § 227(b)(1)(A)(iii)

---

[1] In its motion to strike and to stay, Tobias also moved to dismiss for failure to state a claim. In response, Silver filed the FAC. Because Silver's filing of an amended complaint rendered the first Rule 12(b)(6) motion moot, the Court does not address it here. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (concluding that because an amended complaint superseded a prior complaint, a motion to dismiss directed at the latter "should have been deemed moot").

("Section 227(b)(1)(A)(iii)").

On January 8, 2021, Tobias moved to strike Silver's class allegations. (Dkt. No. 19.) In the alternative, Tobias moved to stay the case until the Supreme Court issues a decision in *Facebook, Inc. v. Duguid*, No. 19-511 (argued Dec. 8, 2020). According to Tobias, because *Duguid* will address a circuit split on the definition of ATDS under the TCPA and because Silver alleges ATDS-based claims, a stay pending *Duguid*'s resolution is appropriate.

Silver filed his FAC on January 22, 2021. In his FAC, Silver asserts the Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1331, federal question jurisdiction, and pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. section 1332(d)(2). (FAC ¶ 2.) Silver also realleges that Tobias violated the TCPA by repeatedly calling him using an ATDS and/or artificial or prerecorded voice from December 2019 or January 2020 "throughout at least the month of January 2020." (*Id.* ¶¶ 8-14.)

On February 5, 2021, Tobias moved to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 32.) Tobias does not address Silver's CAFA-related jurisdictional allegations in its Rule 12(b)(1) motion. However, Tobias argues that Section 227(b)(1)(A)(iii) was unconstitutional at the time of its alleged violation, relying on *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"). Thus, according to Tobias, this Court lacks subject matter jurisdiction over Silver's claims, all of which are based on Section 227(b)(1)(A)(iii).

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.     The Court Denies the Motion to Dismiss for Lack of Subject Matter Jurisdiction.**

Relying on *AAPC*, Tobias moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that Section 227(b)(1)(A)(iii) was unconstitutional at the time of the alleged phone calls. A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a "facial attack," which Tobias brings here, "the challenger asserts that the allegations contained in a complaint are insufficient to invoke federal jurisdiction." *See id.* When reviewing

2

a facial challenge, the court may only consider the complaint (and any attachments thereto) and must accept all factual allegations in the complaint as true. *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). The nonmovant is also entitled to have the factual allegations construed in their favor. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

### 1. The Court has CAFA jurisdiction over this action.

Although Tobias does not challenge Silver's contention that jurisdiction exists under CAFA, the Court finds it appropriate to first examine whether CAFA jurisdiction exists here. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("[C]ourts are under an independent obligation to examine their own jurisdiction.").

Under Ninth Circuit law, there are two steps to establishing CAFA jurisdiction. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007). First, one must satisfy CAFA's jurisdictional "prerequisites," which require the suit to be a "class action" in which "the aggregate number of members of all proposed plaintiff classes is 100 or more persons and . . . the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.'" *Id.* at 1020 (quoting 28 U.S.C. § 1332(d)(5)). The term "class action" includes "any civil action filed under rule 23 of the Federal Rules of Civil Procedure." 28 U.S.C. § 1332(d)(1)(B). Second, after a suit satisfies these prerequisites, the proponent of CAFA-based jurisdiction must demonstrate that "(1) the aggregate amount in controversy exceeds $5,000,000, and (2) [at least one] class member is a citizen of a state different from any defendant." *Serrano*, 478 F.3d at 1020-21.

Here, Silver brings a Rule 23 class action and alleges that the class "members number in the thousands, if not more." (FAC ¶¶ 23-31.) The primary defendant, Tobias, is neither a state nor governmental entity against which this Court could not order relief. *See* 28 U.S.C. § 1332(d)(5)(A). Therefore, this case satisfies section 1332(d)(5)'s jurisdictional prerequisites. With regard to the amount in controversy, Silver "seeks up to $1,500[] . . . for each call in violation of the TCPA" and argues that these damages, "when aggregated among a proposed class in the thousands," will exceed the $5,000,000 threshold. (FAC ¶ 2.) Because Silver appears to

3

have made his allegations in good faith, the Court concludes that he has satisfied the amount-in-controversy requirement. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith."). Finally, Silver alleges that he is a California resident, and has provided a declaration that he is domiciled in Novato, California. (Dkt. No. 38-1, Declaration of Neil Silver, ¶¶ 2-4.)[2] Tobias is a Florida corporation. Accordingly, the Court concludes that minimal diversity of citizenship exists.

Accepting Silver's allegations as true, *see Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), the Court concludes that it has CAFA jurisdiction over this action.

### 2. *AAPC* does not preclude federal question jurisdiction.

Even if this Court lacked CAFA jurisdiction over this action, *AAPC* would not preclude it from exercising federal question jurisdiction. Tobias argues that *AAPC* rendered Section 227(b)(1)(A)(iii)—upon which Silver bases all his claims—unconstitutional at the time of the phone calls, which allegedly occurred in December 2019 and January 2020. Thus, according to Tobias, this Court lacks subject matter jurisdiction because the law at issue, Section 227(b)(1)(A)(iii), was unconstitutional when it was allegedly violated.[3]

Some courts have held that they cannot exercise jurisdiction over a case in which the statute alleged to have been violated is unconstitutional. *See Ex parte Siebold*, 100 U.S. 371, 377 (1879) ("[I]f the laws are unconstitutional and void, the Circuit Court acquired no jurisdiction of

---

[2] In his FAC, Silver alleges that he is a California resident. However, the citizenship of a natural person is "determined by [their] state of domicile, not [their] state of residence." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Accordingly, the Court issued an order to show cause regarding minimal diversity on March 15, 2021. On March 19, 2021, Silver filed his declaration in response.

[3] Tobias seems to contend that any claim brought under Section 227(b)(1)(A)(iii), regardless of the type of subject matter jurisdiction asserted, is untenable. Therefore, Tobias's Rule 12(b)(1) motion might be more appropriately viewed as one brought pursuant to Rule 12(b)(6). *See, e.g., Shen v. Tricolor Cal. Auto Grp., LLC*, No. CV 20-7419 PA (AGRx), 2020 WL 7705888, at *3 (C.D. Cal. Dec. 17, 2020) (construing defendant's Rule 12(b)(1) motion based on *AAPC* as Rule 12(b)(6) motion because it "essentially contend[ed] that enforcement of the TCPA . . . for robocalls made while the government debt exception rendered § 227(b)(1)(A)(iii) unconstitutional would violate the First Amendment"). However, like in *Shen*, the Court concludes that the analysis under either standard would lead to the same result. *Id.* at *3 n.2.

4

the causes."); *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("[O]nce a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce).") (quoting 18 U.S.C. § 3231). Neither the Supreme Court nor the Ninth Circuit has addressed whether the principle expressed in *Siebold* applies in cases such as the instant one, where part of a statute has been severed as unconstitutional. Even if this Court assumes *Siebold* is applicable, it does not change its analysis of *AAPC*'s effect on Section 227(b)(1)(A)(iii).

Generally, Section 227(b)(1)(A)(iii) of the TCPA prohibits "robocalls to cell phones." *See* 140 S. Ct. at 2346. However, Congress introduced an exception to this general prohibition when, in 2015, it amended Section 227(b)(1)(A)(iii) to ban all robocalls "unless . . . [they were] made to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). In *AAPC*, the Supreme Court held that this government-debt exception violated the First Amendment by engaging in content-based discrimination. 140 S. Ct. at 2346. Only two Justices joined the portion of Justice Kavanaugh's plurality opinion that addressed severability, but seven Justices ultimately agreed that the appropriate remedy was to sever the government-debt exception rather than invalidate Section 227(b)(1)(A)(iii) in its entirety. *Id.* at 2349. Notably, the Court declined to hold that the TCPA's general robocall ban was unconstitutional. *Id.* at 2349.

The Supreme Court did not address whether Section 227(b)(1)(A)(iii) was unconstitutional with respect to robocalls unrelated to government debt for the period between the 2015 amendment's enactment and the *AAPC* decision. The closest it came to doing so was a footnote in which Justice Kavanaugh, joined by Chief Justice Roberts and Justice Alito, noted that the "decision . . . [did] not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12. Thus, with little binding guidance, courts have reached different conclusions regarding whether they have jurisdiction over Section 227(b)(1)(A)(iii) claims for non-government-debt robocalls that occurred "while the government-debt exception was affixed to the face of the statute--that is, between November 2015 and July 6, 2020." *Stoutt v. Travis Credit Union*, No. 2:20-cv-01280 WBS AC, -- F. Supp. 3d --, 2021 WL 99636, at *2 (E.D. Cal. Jan. 12, 2021) (collecting cases).

To support its argument that Section 227(b)(1)(A)(iii) was unconstitutional prior to *AAPC*, Tobias relies on three out-of-circuit cases. In each of these cases, the court dismissed footnote 12 from *AAPC* as non-binding dictum and determined that so long as Section 227(b)(1)(A)(iii) contained the government-debt exception, it was unconstitutional in its entirety. *See Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38-Oc-30PRL, -- F. Supp. 3d --, 2020 WL 7346536, at *3 (M.D. Fla. Dec. 11, 2020) (relying on *Lindenbaum* and *Creasy* to conclude that *AAPC*'s severance of the government-debt exception could not retroactively relieve Section 227(b)(1)(A)(iii) of its constitutional defect); *Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, -- F. Supp. 3d --, 2020 WL 6361915, at *5-7 (N.D. Ohio Oct. 29, 2020) (dismissing footnote 12 as "non-binding *obitur dictum*" and concluding that it lacked jurisdiction because Section 227(b)(1)(A)(iii) "was unconstitutional at the time of the alleged violations"); *Creasy v. Charter Comms., Inc.*, No. 20-1199, -- F. Supp. 3d --, 2020 WL 5761117, at *2 (E.D. La. Sept. 28, 2020) (concluding that "the *entirety* of [Section] 227(b)(1)(A)(iii) was, indeed, unconstitutional" prior to *AAPC*).

Although the Court acknowledges these decisions, it respectfully disagrees with their reasoning. While Justice Kavanaugh's statement in footnote 12 may be dicta, "considered dicta from the Supreme Court . . . 'have a weight that is greater than ordinary judicial dicta as prophecy of what the Court might hold.'" *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (citations omitted) (quoting *Zal v. Steppe*, 968 F.2d 924, 935 (9th Cir. 1992)). Other courts within the Ninth Circuit have relied on footnote 12 to analyze the Supreme Court's intent in *AAPC*, and the Court finds it appropriate to do so here. *See, e.g.*, *Massaro v. Beyond Meat, Inc.*, No. 3:20-cv-00510-AJB-MSB, 2021 WL 948805, at *9 (S.D. Cal. Mar. 12, 2021); *Stoutt*, 2021 WL 99636, at *3; *Shen*, 2020 WL 7705888, at *4. Additionally, the seven Justices who agreed on severance as the proper remedy implicitly declined to invalidate the entire robocall ban. *See Stoutt*, 2021 WL 99636, at *4. This, viewed alongside Justice Kavanaugh's note, suggests that the Supreme Court did not intend for the TCPA's robocall ban to be completely unenforceable between 2015 and July 6, 2020.

Moreover, prior to *AAPC*, the Ninth Circuit similarly severed the government-debt

6

exception from Section 227(b)(1)(A)(iii). *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156-57 (9th Cir. 2019), *cert. granted in part*, 141 S. Ct. 193 (July 9, 2020) (No. 19-511). There, the plaintiff alleged post-2015 violations on behalf of a class, but the Ninth Circuit concluded that the district court's Rule 12(b)(6) dismissal of his claims was improper and remanded the case for further proceedings. *Id.* at 1153, 1157. Although the Supreme Court had the opportunity to address whether *Duguid*'s resolution of Section 227(b)(1)(A)(iii)'s constitutional infirmity was appropriate, it declined to do so. *Cf. McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2021 WL 288164, at *2 (S.D. Cal. Jan. 28, 2021) (recognizing that the Supreme Court granted certiorari in *Duguid* "solely" to address the definition of ATDS). Accordingly, *Duguid* suggests that Section 227(b)(1)(A)(iii) remains enforceable against robocalls unrelated to the collection of government debt.

Further, numerous lower courts within the Ninth Circuit, including *Stoutt*, *Shen*, and *Massaro* have concluded that Section 227(b)(1)(A)(iii) was constitutional between 2015 and July 6, 2020, with respect to non-government-debt robocalls. *See, e.g.*, *McCurley*, 2021 WL 288164, at *2 ("This case does not involve the collection of debt; therefore, . . . *AAPC* does not negate Defendant's liability."); *Trujillo v. Free Energy Savings Co., LLC*, No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, at *4-5 (C.D. Cal. Dec. 21, 2020) ("[T]he robocall statute remains enforceable . . . as to calls made between 2015 and 2020."); *cf. Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020) (addressing whether to grant a stay pending *Duguid* and noting that *AAPC* left the robocall ban "otherwise intact"). The Court finds the reasoning in these cases persuasive and concludes that *AAPC* does not preclude it from exercising federal question jurisdiction over this case.

Accordingly, the Court DENIES Tobias's motion to dismiss for lack of subject matter jurisdiction.

**B.     The Court Grants the Motion to Stay.**

Tobias also moves the Court to stay this action pending the Supreme Court's resolution of *Duguid*, in which it granted certiorari to address "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the

7

device does not 'us[e] a random or sequential number generator.'" Petition for Writ of Certiorari at ii, *Duguid*, No. 19-511 (filed Oct. 17, 2019), 2019 WL 5390116. Circuit courts are split on the issue; the Ninth Circuit has adopted a broad definition and does not require a device to "us[e] a random or sequential number generator" to be an ATDS. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, "[t]he exertion of [the stay] power calls for the exercise of sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The competing interests that a district court must weigh in exercising this discretion include: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* at 265 (citing *Landis*, 299 U.S. at 254-55).

A district court "may . . . enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case," but the separate proceeding need not be "controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). "'[I]f there is even a fair possibility that the stay . . . will work damage to some one [*sic*] else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis*, 299 U.S. at 256). The movant has the burden of showing that a stay is appropriate. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

First, the Court examines the possible damage to Silver from granting a stay. Silver asserts that a stay will prejudice him and the putative class because evidence could be lost. Specifically, he argues that if Tobias used third-party carriers to place calls, he will "struggle to obtain call logs . . . because carriers' average retention period for call logs (without content) is approximately 18-24 months." (Opp. Br. at 6.) However, as one of this Court's colleagues recently noted, "the risk

8

of potentially lost evidence is insufficient to deny a stay in the face of a pending Supreme Court decision that will decide a key legal question in the case." *Aleisa v. Square, Inc.*, No. 20-CV-00806-EMC, -- F. Supp. 3d --, 2020 WL 5993226, at *7-8 (N.D. Cal. Oct. 9, 2020) (granting stay pending *Duguid* despite plaintiffs' concerns about 18 to 24 month retention period for text message logs). Without more, the Court concludes Silver's evidentiary concerns are merely speculative and not indicative of possible damage to him. *See, e.g., Trim v. Mayvenn, Inc.*, No. 20-cv-03917-MMC, 2020 WL 6460543, at *3 (N.D. Cal. Nov. 3, 2020) (concluding that a "concern that the requested stay [would] result in a loss of evidence [was], in the absence of supporting facts, no more than speculation").

Additionally, Silver argues that a stay will prejudice him and the putative class because it "may be indefinite." (Opp. Br. at 6.) However, the Supreme Court held oral argument in *Duguid* on December 8, 2020. A decision in *Duguid* is likely to come "in the first half of 2021." *Aleisa*, 2020 WL 5993226, at *7. Some courts previously denied *Duguid*-based stays because the *Duguid* appeal was in its early stages. *See, e.g.*, *Smith v. JPMorgan Chase Bank, N.A.*, No. 20-CV-01777-CBM-(PJWx), 2020 WL 5033532, at *1-2 (C.D. Cal. Aug. 21, 2020) (denying stay because it was "purely speculative whether the . . . Supreme Court [would] issue a decision in *Duguid* within a year"). That is not the case here. Accordingly, the Court concludes that the first factor weighs in favor of a stay.

Second, the Court examines the "hardship or inequity" that Tobias may face in being required to go forward. Silver argues that Tobias will not face hardship because, regardless of the outcome in *Duguid*, Tobias will still have to litigate the artificial-voice claims. However, as another court within this district noted, a separate action need not "resolve the instant action in its entirety" for a stay to be appropriate. *See Trim*, 2020 WL 6460543, at *4. Courts have granted stays because *Duguid* could narrow some of the issues, even where non-ATDS claims were involved. *See, e.g.*, *Skulevold v. SD&A Teleservices, Inc.*, No. 2:20-CV-2771-AB (JCx), 2020 WL 7711834, at *4 (C.D. Cal. Nov. 18, 2020) (granting *Duguid*-based stay even though plaintiff brought non-TCPA claims because *Duguid* could narrow issues); *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 WL 5249263, at *4 (D. Ariz. Sept. 3,

2020) (granting stay, despite fact that artificial-voice claims were involved, because *Duguid* could "significantly narrow the issues involved"). Here, *Duguid* could narrow Silver's claims, and Tobias would face hardship if it were forced to conduct unnecessary discovery or face class-certification motions that ultimately prove irrelevant. Therefore, the second factor weighs in favor of a stay.

Finally, the third factor assesses whether a stay will promote the "orderly course of justice." *CMAX*, 300 F.2d at 268. Tobias argues that the *Duguid* decision could "set[] forth an ATDS definition that would eliminate [Silver's] claims in their entirety," thereby "render[ing] wholly superfluous" any discovery or motion practice. (Dkt. No. 19 at 5.) Here, Silver does not allege that Tobias used a random or sequential number generator. Thus, if the Supreme Court embraces a narrower definition of ATDS in *Duguid*, it will eliminate Silver's ATDS-based TCPA claims. *See, e.g.*, *Aleisa*, 2020 WL 5993226, at *7-8 (granting stay because *Duguid* could "doom" plaintiff's claims and "would greatly simplify a key question of law"). Because a stay could simplify the issues and prevent the parties and the Court from wasting resources, the third factor weighs in favor of a stay.

Accordingly, the Court GRANTS Tobias's motion to stay this case pending the Supreme Court's resolution of *Duguid*.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Tobias's motion to dismiss for lack of subject matter jurisdiction. The Court GRANTS Tobias's motion to stay this case and HEREBY STAYS this litigation pending the issuance of the Supreme Court's decision in *Duguid*. The parties shall file a notice with this Court no later than ten (10) days after the Supreme Court issues its ruling, or otherwise disposes of the *Duguid* case.

//
//
//
//
//

//

In light of the stay, the Court DENIES WITHOUT PREJUDICE Tobias's motions to dismiss the FAC for failure to state a claim and to strike class allegations. Tobias may renew these motions once the Court lifts the stay.

**IT IS SO ORDERED.**

Dated: March 26, 2021

_____
JEFFREY S. WHITE
United States District Judge

11